**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Spencer,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-19-01052-PHX-MHB<br><br>**ORDER** |

At issue is the Commissioner of Social Security ("Commissioner")'s denial of Plaintiff's applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the decision, and the Court now considers Plaintiff's Opening Brief (Doc. 11, "Pl. Br."), the Commissioner's Response Brief (Doc. 14, "Def. Br."), Plaintiff's Reply Brief (Doc. 15, "Reply"), and the Administrative Record (Doc. 10, "R."). Because the Court finds the decision free of legal error and supported by substantial evidence, it will affirm.

**I.    BACKGROUND**

In February 2013, Plaintiff sustained an injury to her right arm after she reportedly hit a curb and fell off her bicycle. (R. at 50–51, 508.) She alleges that despite treatment and surgical intervention, she is unable to work. (*Id.* at 50–53, 246, 254–262.) Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on January 8, 2015 and January 29, 2016, respectively, alleging disability as of

August 31, 2013. (*Id.* at 19.) The Commissioner denied the applications initially and upon reconsideration, and a hearing before an administrative law judge ("ALJ") was held. (*Id.*) The ALJ issued a decision finding Plaintiff not "disabled" (*Id.* at 19–36), which was upheld by the Appeals Council and thus final (*Id.* at 4–7).

The ALJ found Plaintiff had "severe" impairments of degenerative disc disease, status post right cubital tunnel release, right shoulder arthrosis, complex regional pain syndrome type 2, anxiety disorder, and affective disorder. (*Id.* at 21.) The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the following exceptions.[1] (*Id.* at 24.) With her right upper extremity, Plaintiff could frequently handle, finger, and feel but never push, pull, or reach overhead. (*Id.*) Plaintiff could never crawl or climb ladders, ropes, or scaffolds but could frequently climb ramps and stairs, balance, stoop, crouch, and kneel. (*Id.*) She could have occasional exposure to non-weather related extreme cold and extreme heat and to excessive vibration but no exposure to dangerous machinery with moving mechanical parts or unprotected heights. (*Id.*) Lastly, Plaintiff was limited to tasks that can be learned by demonstration within thirty days. (*Id.*) In formulating the RFC, the ALJ gave no "special weight" to the opinion of Dr. Ralph Purcell, M.D. and "little weight" to the opinion of Dr. Shebah Shah, M.D. (*Id.* at 29-31.) The ALJ also found Plaintiff's subjective testimony "not fully consistent" with the evidence of record. (*Id.* at 25–34.) Based on the RFC and testimony from a vocational expert ("VE"), the ALJ determined Plaintiff could perform work as a cashier II and was therefore not "disabled." (*Id.* at 35, 73–74.)

Plaintiff alleges the ALJ erred in discounting her subjective testimony (Pl. Br. at 20–22) and in weighing the medical opinions of Drs. Purcell and Shah (*Id.* at 16–20). Plaintiff requests that the Court remand the case for payment of benefits. (*Id.* at 22–24.)

. . .

. . .

---

[1] Title II claims are governed by 20 C.F.R. Part 404 while Title XVI claims are governed by 20 C.F.R. Part 416. Because the regulations are substantively identical, the Court will only cite to Part 404 throughout its analysis for brevity but notes that Part 416 also applies.

## II. LEGAL STANDARD

The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) which provides that a reviewing court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. The Court limits its review to issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court sets aside the decision only when it is based on legal error or not supported by "substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75. The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.* The Court will not reverse for harmless error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [the] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is "disabled" under the Act, the ALJ employs a five-step sequential evaluation. The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). In brief, the ALJ must determine whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1 of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other

work" based on his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

## III. ANALYSIS

### A. The ALJ Gave Clear And Convincing Reasons For Discounting Plaintiff's Pain And Symptom Testimony.

Plaintiff alleges the ALJ failed to provide legally sufficient reasons for discounting her pain and symptom testimony. (Pl. Br. at 20–22.)

"The ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). However, absent evidence of malingering, the ALJ may only discount a claimant's allegations for "specific, clear and convincing" reasons. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.

"In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation" and "may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112 (internal citation and quotations omitted). Additionally, the ALJ may consider: "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical

evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). A lack of supporting medical evidence is also a factor but cannot be the sole basis for rejecting a claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found that "the overall evidence indicates that while the claimant's condition restricts her ability to perform work-related activity, her condition does not preclude all work activity." (R. at 33.) In particular, the ALJ found Plaintiff's allegations to be "not fully consistent with the evidence of record," citing her daily activities, the medical evidence, instances of noncompliance with treatment, and inconsistencies in the record. (*Id.* at 24–34.)

### 1. Plaintiff failed to comply with recommended treatment and experienced relief when she did, which suggests that her symptoms are not as severe as alleged.

The ALJ noted that in October 2014, Plaintiff was prescribed a Medrol Dosepak and NSAIDs for her arm pain. (*Id.* at 28, 597.) However, Plaintiff admitted she did not take either medication "because she does not like to take medicine."[2] (*Id.* at 593.) Her provider noted she discussed the difficulty of knowing "what treatment plan to use if she is not willing to participate in any of the recommended treatment options." (*Id.* at 595.) In November 2015, Plaintiff's neurologist likewise discussed Plaintiff's refusal to take medication, telling Plaintiff, "[T]here is no one time remedy to address her symptoms and she has to choose between being in pain all the time and not having any quality of life and trying medication to improve her condition."[3] (*Id.* at 695.)

Despite this initial reluctancy, Plaintiff eventually found relief in opioids. (*Id.* at 28, 57.) The ALJ found, however, that in seeking opioids, Plaintiff exhibited "drug-seeking

---

[2] The provider noted Plaintiff was "hesitant" to take medication because she did not want to put "un-natural things in her body," noting also that Plaintiff admitted "she is still smoking regularly." (R. at 594–95.)

[3] Additionally, in January 2016, Plaintiff was prescribed Cymbalta, but stopped after a month because she did not notice any change. (*Id.* at 768.) Her provider noted that Plaintiff did not give it enough time and readjusted the dose. (*Id.* at 768–69.)

behavior." (*Id.* at 28.) The CORE Institute, which had been treating Plaintiff's pain, discharged Plaintiff for violating the medication agreement. (*Id.* at 28, 1180, 1190.) Plaintiff then presented at an HonorHealth clinic in June 2016 seeking narcotics during what was initially a visit for a physical. (*Id.* at 887–88.) The provider explained that Plaintiff had to see a pain specialist for such medication at which point Plaintiff became "very upset" and started crying. (*Id.*) The provider noted that she felt Plaintiff had "pain med seeking behavior." (*Id.* at 28, 888.) The clinic contacted The CORE Institute and learned of Plaintiff's discharge for violating the medication agreement. (*Id.* at 905.) The clinic then called Plaintiff to inform her that she could be prescribed pain medication if she signed a controlled substances contract. (*Id.* at 904.) Plaintiff initially agreed and scheduled an appointment but later canceled the appointment. (*Id.*) Plaintiff presented at a third clinic, Arizona Pain, in July 2016. (*Id.* at 821.) She was again refused pain medication because she stated she was seeking medical marijuana and the clinic's policy was to not prescribe controlled medications with medical marijuana use. (*Id.* at 827.) She also stated she had been seen by fifteen pain management clinics in the past. (*Id.* at 822.) In August 2016, she returned to The CORE Institute but was told she would not be prescribed pain medication given the previous discharge. (*Id.* at 1190.) Plaintiff ultimately found a provider willing to prescribe opioids, which she reportedly got relief from, even having pills left over in one instance.[4] (*Id.* at 28, 774, 797, 1130, 1133, 1140.)

The Court finds no error despite Plaintiff's assertion of a logical error regarding the ALJ's findings. (Pl. Br. at 22.) Both the failure to take prescribed medication and the failure to comply with agreements regarding prescribed medication constitute failures to follow a prescribed course of treatment, which is a clear and convincing reason for discrediting a claimant's testimony. *See Lingenfelter*, 504 F.3d at 1040; *Fair*, 885 F.2d at 603 (stating that a claimant's failure to assert one "good" reason for failing to follow a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"). When

---

[4] Plaintiff also reported that she felt lorazepam "really helped her." (R. at 774.) She reported better pain control and having more days where she did not need to take anything for her pain. (*Id.*)

Plaintiff did take medication as prescribed, she reported relief, which is also a sufficient reason to discount her testimony. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.").

> **2. Plaintiff engages in activities which are contrary to her allegations of disability, which casts doubt on the credibility of her testimony.**

The ALJ found Plaintiff's reported daily activities inconsistent with her complaints of disabling symptoms and limitations, citing her independence in personal care, ability "to prepare simple meals, do light household cleaning, use public transportation, care for a dog, shop in stores with company to push the cart, spend time with family, and attend group meetings." (R. at 25 (citing exhibits in the record), 33.)

The Court finds no error. "While a claimant need not vegetate in a dark room . . . to be eligible for benefits," *Cooper v. Bowen*, 815 F.2d 561, 557 (9th Cir. 1987) (internal quotes and citation omitted), "[a claimant's daily activities] may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113. This applies "[e]ven where those activities suggest some difficulty functioning." *Molina*, 674 F.3d at 1113. On one hand, Plaintiff stated that she cannot lift a gallon of milk with her right hand but is still able to prepare simple meals and feed herself. (*Id.* at 24, 33, 1117.) Additionally, despite reporting that she cannot brush her teeth or hair with her right hand, she nonetheless is independent in personal care. (*Id.* at 25, 1117.) Moreover, while she testified that she cannot drive or ride in a car because of pain, she is able to use public transportation to get around as she testified to using Lyft to get to her hearing. (*Id.* at 24, 57, 61.) Lastly, despite her allegations of unrelenting pain and inability to use her right arm, she fractured her right elbow in July 2014 after reportedly punching her friend while "wrestling and rough housing." (*Id.* at 25, 57, 437–445, 562.) The Court finds these particular activities are sufficient to discredit Plaintiff's allegations of disability. *See Valentine*, 574 F.3d at 694 (affirming ALJ's finding that while claimant's daily activities "did not suggest [he] could return to his old job," such

activities "did suggest that [his] later claims about the severity of his limitations were exaggerated").

### 3. Medical evidence does not support the alleged severity of disability.

The ALJ summarized Plaintiff's medical history. (R. at 25–28, 33.) The ALJ concluded that while the "medical evidence . . . demonstrates that the claimant's right arm injury and subsequent surgery has limited her use of her right arm," the "medical records do not demonstrate that this impairment precludes all work." (*Id.* at 28.)

The Court finds no error. Here, substantial evidence supports the ALJ's conclusion. As noted by the ALJ, while Plaintiff had diminished strength in her right arm (3/5, 4/5), she was found to have otherwise normal strength throughout, normal gait, normal deep tendon reflexes, and normal pulses. (*Id.* at 28, 650–51, 677, 1176.) These normal findings and the fact that Plaintiff retained *some* strength in her right arm suggests that she is not entirely debilitated and precluded from all work.

### B. The ALJ Properly Considered Medical Opinion Evidence.

Plaintiff alleges the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinions of Drs. Purcell and Shah. (Pl. Br. at 16–19.)

Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining, non-treating physicians are entitled to the least weight.[5] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If the ALJ discredits a controverted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. *Id.* An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other

---

[5] A treating source's opinion is given "controlling weight" if it is "well-supported" by objective medical evidence and is "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In evaluating a medical opinion, the ALJ considers: (1) whether the physician examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization; and (6) "other factors," such as "the amount of understanding [a physician has] of [the Commissioner's] disability programs and their evidentiary requirements." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. An ALJ may reject an opinion that is brief, conclusory, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of physician's opinion that "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain"); *Thomas*, 278 F.3d at 957 (stating that an ALJ may reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings"); *see also* 20 C.F.R. § 404.1527(c)(3). The ALJ may also consider internal inconsistencies in the opinion as well as inconsistencies with other opinions. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Additionally, the ALJ may consider whether the opinion was solicited by an attorney, provided that it is not the ALJ's sole basis for discrediting the opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988)). Like a medical opinion, a physician's controverted opinion on the ultimate issue of disability (i.e., whether a claimant is "disabled" or "unable to work")–though an administrative finding reserved to the Commissioner–may only be disregarded for reasons that are specific and legitimate. *Id.* at 725; *see generally* 20 C.F.R. § 404.1527(d)(1).

. . .

. . .

. . .

### 1. The ALJ gave specific and legitimate reasons for discrediting Dr. Purcell's opinion.

Dr. Purcell, an orthopedic surgeon, performed an independent medical examination of Plaintiff on November 18, 2014 in connection with her bicycle injury. (R. at 910–21.) His January 30, 2015 report contains a comprehensive chronology of Plaintiff's medical history dating back to the February 2013 accident as well as clinical findings from his own examination. Regarding her right upper extremity, he noted a "well-healed surgical incision" along her right elbow where she had undergone a cubital tunnel release procedure. (*Id.* at 919.) He noted "mild swelling" but "no other objective abnormal findings and no other abnormal findings with visual inspection." (*Id.*) He noted "diminished 4/5 muscle strength." (*Id.*) However, she had normal muscle strength on the left. (*Id.*) Also on the left, he noted normal reflexes but "because of the degree of symptoms," he did not perform reflex testing on the right. (*Id.*) She also had a positive Tinel's sign on her right side, which was "consistent with, but not diagnostic of, nerve irritation or entrapment." (*Id.*) She complained of pain along her right arm upon palpation. (*Id.* at 919–20.) Dr. Purcell concluded that Plaintiff "remains disabled as a consequence of her injury," citing her "multitude of complaints" and "findings on examination which demonstrate restricted movement, muscle strength, and function." (*Id.* at 921.) He did, however, opine that further medical intervention and physical therapy could improve her condition. (*Id.*)

The ALJ accorded Dr. Purcell's opinion no "special weight" because it was an opinion on the ultimate issue of disability. (*Id.* at 29.) Additionally, the ALJ found his opinion was "vague" since it did not contain specific functional limitations. (*Id.*) Lastly, the ALJ found Dr. Purcell's opinion lacked support from his own examination report and was "contrary to the evidence as a whole." (*Id.* at 29–30.) In particular, the ALJ noted that while Dr. Purcell's examination "showed mild right elbow swelling, tenderness to palpation at the right shoulder and along the right elbow and forearm, decreased range of motion and decreased motor strength in the right upper extremity, and positive Tinel sign at the right cubital tunnel and carpel tunnel," Plaintiff "otherwise had full motor strength

and range of motion throughout, normal deep tendon reflexes, no atrophy, and normal pulses." (*Id.* (citing *id.* at 911–20).)

The Court finds no reversible error. The ALJ properly rejected Dr. Purcell's opinion because it is vague and does not prescribe specific functional limitations that are helpful in ascertaining Plaintiff's residual functional capacity. *See generally* 20 C.F.R. § 404.1545(a)(1) ("[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations."); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements . . . that reflect judgments about the nature and severity of [a claimant's] impairments, including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."). Here, Dr. Purcell merely states that Plaintiff has "restricted movement, muscle strength, and function" and "remains disabled." (*Id.* at 921.) He renders no opinion as to what Plaintiff remains capable of despite these findings and how exactly these findings give rise to an inability to work.

The Court, however, finds error where the ALJ fails to provide substantial evidence for why she believed Dr. Purcell's opinion was "contrary to the evidence as a whole" by failing to set forth a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. At the outset, the ALJ maintains that Dr. Purcell's opinion is contrary to the evidence *as a whole* yet only expressly references clinical findings made by Dr. Purcell in support of this contention. Second, the referenced findings are not actually "conflicting." For instance, the fact that Dr. Purcell noted a normal range of motion in Plaintiff's neck does nothing to undermine the abnormal findings he made with respect to her right elbow. (*Id.* at 918–19.) Likewise, his finding of normal strength in Plaintiff's left elbow does not undermine his finding of 4/5 strength in her right. (*Id.* at 919.) Thus, the ALJ failed to show substantial evidence supports this reason for rejecting Dr. Purcell's opinion.

Notwithstanding the above, the Court upholds the ALJ's decision because the ALJ properly rejected Dr. Purcell's for other noted reasons that are valid and supported by substantial evidence. Thus, any error by the ALJ in relying on a reason unsupported by

substantial evidence is inconsequential to the ultimate nondisability determination and therefore harmless. *See Treichler*, 775 F.3d at 1099; *cf. Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where ALJ had also relied on other reasons that were valid).

### 2. The ALJ gave specific and legitimate reasons for rejecting Dr. Shah's opinion.

Dr. Shah examined Plaintiff on September 6, 2017 and rendered two separate opinions on her functional abilities. (*Id.* at 1116–20, 1193–97.) During the examination, Plaintiff reported that she cannot brush her teeth or hair, cannot lift a gallon of milk, and can "barely" lift a cup of tea or can of soda with her right arm. (*Id.* at 1117.) Dr. Shah attempted to examine Plaintiff's right arm, but Plaintiff refused and asked her to step away several times because "she felt nervous." (*Id.*) Dr. Shah noted that this made her ability to examine Plaintiff "very limited." (*Id.*) She did note that when she asked Plaintiff to extend her arm, Plaintiff "exhibited severe pain." (*Id.*) She further noted that Plaintiff had 5/5 strength in her left arm but was "only able to observe the right arm and did not noted [sic] some muscle atrophy." (*Id.* at 1117–18.) Additionally, Dr. Shah noted normal eyes, ears, nose, throat, neck, nodes, chest, and lungs. (*Id.* at 1117.)

Based on this examination and a review of certain medical records, Dr. Shah opined that Plaintiff could "occasionally" lift/carry two pounds with her left arm and one pound with her right arm and "frequently" lift one pound and carry less than one pound. (*Id.* at 1118.) She further opined that Plaintiff could not stand or walk for more than six hours in a day or for more than 30 minutes at a time. (*Id.* at 1119.) She explained, "Walking require[s] swinging of the upper limbs. Because [Plaintiff] holds her right arm close to her chest and torso, she cannot perform the regular swing of arms with normal gait and this will impede her ability to tolerate prolonged walking or standing." (*Id.*) Dr. Shah also opined that Plaintiff could only sit for four hours and needed to take frequent breaks every hour to change positions. (*Id.*) She also prescribed various postural and environmental

limitations. (*Id.* at 1119–20.)

On October 2, 2017–barely a month later–Dr. Shah rendered a second opinion, which was inconsistent with her first opinion despite the short time gap and no record of any second examination. (*Id.* at 1193–97.) Where Dr. Shah had opined that Plaintiff was capable of standing or walking for up to six hours, she now opined that Plaintiff could only tolerate *two* hours of standing or walking, without explanation. (*Id.* at 1194.)

The ALJ accorded both opinions "little weight." (*Id.* at 30–31.) At the outset, the ALJ noted that Dr. Shah is not a treating physician since she only examined Plaintiff once. (*Id.* at 30.) The ALJ found that Dr. Shah's opinions were largely based on Plaintiff's subjective complaints and her examination report did not provide support for her opinions. (*Id.*) In particular, the ALJ found that Dr. Shah's standing, walking, and sitting limitations were not supported by medical evidence. (*Id.*) She also noted the inconsistency of the standing and walking limitations between the two opinions. (*Id.*) Lastly, the ALJ found that Dr. Shah's opinions were inconsistent with findings made by other physicians. (*Id.* at 30–31 (citing *id.* at 1175–80).)

The Court finds no error. As check-list opinions inadequately supported by clinical findings and based largely on Plaintiff's subjective complaints (which, as discussed, were properly discounted) the ALJ was free to reject them. *See Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *see also* 20 C.F.R. § 404.1527(c)(3). Moreover, as noted by the ALJ, the two opinions were inconsistent with one another, another legitimate reason to reject them. *See Morgan*, 169 F.3d at 603. Contrary to Plaintiff's assertion that the ALJ engaged in "pure speculation" in finding that the opinions were largely based on her subjective complaints, the Court finds that the ALJ's interpretation was rational. (Pl. Br. at 18.) While Dr. Shah prescribed extreme (and inconsistent) limitations with regards to Plaintiff's ability to stand and walk, she made no clinical findings with respect to Plaintiff's lower extremities. Instead, she provided a creative explanation devoid of any clinical support. The only clinical 'finding' made by Dr. Shah on Plaintiff's walking ability was that Plaintiff "was able to walk to the examination room without assistance." (R. at 1117.)

Additionally, there was no meaningful examination of Plaintiff's right arm, as noted by Dr. Shah herself. Thus, the ALJ could reasonably infer that the opined-to limitations were largely based on Plaintiff's subjective claimants given the lack of objective medical evidence to support them. Lastly, the ALJ's citation to medical records and findings contradicting Dr. Shah's opinion further reduces the weight it is entitled to. *See* 20 C.F.R. § 404.1527(c)(4). The Court therefore finds that the ALJ's reasons for rejecting Dr. Shah's opinions were specific and legitimate.[6]

### 3. The ALJ did not err in weighing the opinions of the state agency medical consultants.

Plaintiff alleges the ALJ "erroneously" gave great weight to the opinions of the state agency medical consultants. (Pl. Br. at 20.)

The ALJ accorded "substantial weight" to opinions of state agency medical consultants who opined that "[Plaintiff] is able to perform a range of light work with postural, manipulative, and environmental limitations." (R. at 31 (citing R. at 84–102 (opinion at initial level), 104–123 (opinion at reconsideration level).) The ALJ justified the weight given to the consultants, stating "[t]hey are familiar with the agency's rules and regulations, they had the opportunity to review the record, and their opinions are consistent with the record and support a finding of non-disability." (*Id.*) These are permissible factors for deciding how much weight to give an opinion. *See* 20 C.F.R. §§ 404.1527(c)(4), (6). The Court finds no error. Moreover, the opinions constitute substantial evidence because they are consistent with the other evidence. *See Thomas*, 278 F.3d at 957.

. . .

---

[6] The ALJ and the Commissioner assert that Plaintiff's attorney paid for the examination with Dr. Shah. (R. at 30, Def. Br. at 9.) However, the Court finds no substantial evidence supporting this assertion. Nevertheless, because the ALJ proffered several other specific and legitimate reasons supported by substantial evidence for rejecting Dr. Shah's opinion, any reliance by the ALJ on this reason is "inconsequential to the ultimate nondisability determination" and any error is thus harmless. *Treichler*, 775 F.3d at 1099; *cf. Bray*, 554 F.3d at 1227 (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where ALJ had also relied on other reasons that were valid).

## C. Substantial Evidence Supports The RFC Assessment.

Plaintiff alleges that the ALJ erred by failing "to explain why the evidence supports a light residual functional capacity" and "how the normal findings in the rest of her body detract from the long list of positive findings in her right arm and neck." (Pl. Br. at 20.)

A claimant's "residual functional capacity is the most [a claimant] can still do despite [her] impairments." 20 C.F.R. § 404.1545(a)(1). The ALJ assesses the RFC "based on all of the relevant medical and other evidence." *Id.* at (a)(2). Here, the ALJ "adopted [] specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole while considering the claimant's subjective limitations." (R. at 29.)

The Court finds the RFC is reasonable and supported by substantial evidence. Contrary to Plaintiff's assertion, the ALJ did not utilize the "normal findings in the rest of her body" to "detract from" the abnormal findings. Rather, the ALJ merely found that given these normal findings no "*additional* restrictions" were warranted, implying that some restrictions were, in fact, warranted. (*Id.* at 31 (emphasis added).) Indeed, with respect to Plaintiff's right arm, the ALJ found that while the medical evidence demonstrated some limitations as a result of her injury and subsequent surgery, it did not show the limitations precluded all work. (*Id.* at 28.) To account for these limitations, the ALJ restricted Plaintiff to just "frequent" handling, fingering, and feeling and no pushing, pulling, or overhead reaching with the right arm. (*Id.* at 24.) Given that the evidence shows Plaintiff retained *some* strength in her right arm, as noted by findings of 3/5 and 4/5 strength, and no abnormal findings with respect to the rest of her body, the RFC is based on a rational interpretation of the medical evidence. Plaintiff's mere disagreement with the RFC does not render it irrational or unsupported by substantial evidence so as to warrant reversal. *See Trevizo*, 871 F.3d at 674–75 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."); *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

**IT IS THEREFORE ORDERED**, affirming the Commissioner's decision.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 24th day of February, 2020.

_____
Honorable Michelle H. Burns
United States Magistrate Judge